FILED

2018 JAN 29 PM 3: 22

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| | ) | |
| Plaintiff, | ) | **JUDGE BOYKO** |
| | ) | |
| v. | ) | CASE NO. 1:18  CR  48 |
| | ) | Title 18, Section 1343, and Title |
| JAMES M. UNGER, | ) | 26, Section 7206(1) United |
| | ) | States Code |
| Defendant. | ) | |

GENERAL ALLEGATIONS

The United States Attorney charges:

1.      At all times material herein, Defendant JAMES M. UNGER resided in Shaker

Heights, Ohio, in the Northern District of Ohio, Eastern Division.

2.      From in or around June 1994, through on or about September 30, 2014, UNGER

was registered with the Financial Industry Regulatory Authority (FINRA) as a broker authorized

to sell securities products.

3.      From on or about December 5, 2005, until on or about January 2, 2013, UNGER

was registered with the Securities and Exchange Commission (SEC) as an investment advisor

representative.

4.      From in or around February 2003, through in or around June 2014, UNGER was employed by various investment and brokerage entities wherein he provided financial advice to individual clients.

5.      From in or around December 2006, through in or around June 2014, E.C., not charged herein, was a client of UNGER who sought his assistance as a securities broker and financial advisor.

6.      From in or around June 2003, through in or around November 2013, J.V. and D.V., both not charged herein, were clients of UNGER who sought his assistance as a financial advisor.

7.      From in or around the 1980s, through in or around 2015, W.S., not charged herein, was a client of UNGER who sought his assistance as a securities broker and financial advisor.

### COUNTS 1 and 2
### (Wire Fraud, 18 U.S.C. § 1343)

8.      The general allegations in paragraphs 1 through 7 are incorporated herein and realleged by reference.

9.      From in or around December 2006, through in or around May 2014, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant JAMES M. UNGER devised and intended to devise a scheme and artifice to defraud his clients, including E.C., and to obtain money and property by means of false and fraudulent pretenses, representations, and promises as set forth below.

It was part of the scheme and artifice to defraud that:

10.     In or around December 2006, E.C.'s ex-husband introduced E.C. to UNGER for investment advice, particularly regarding investments in annuities.

11.     From their introduction in and around December 2006 going forward, UNGER developed a close personal relationship with E.C., wherein E.C. relied on UNGER's financial advice.

12.     On or about May 15, 2007, E.C. executed a durable power of attorney, which gave UNGER control of her financial affairs.

A.     **THE CASINO PROJECT INVESTMENT**

13.     In or around July 2007, UNGER convinced E.C. to invest in a high-risk international casino project ("casino project") based on UNGER's assurances that it was a very safe, lucrative investment.

14.     With respect to the casino investment, UNGER, and others, provided E.C. with promissory notes guaranteeing a 15% yearly rate of return.

15.     From in or around 2008 through in or around 2009, E.C. invested approximately $407,000 in the casino project before its initial failure.

16.     On or about April 9, 2010, without E.C.'s knowledge or consent, UNGER wired $10,000 from E.C.'s account ending in #8020 to W.S. to reimburse him for an interest payment on his investment in the casino project.

17.     On or about June 5, 2012, UNGER converted E.C.'s casino project investment to stock in a new company allegedly trying to revive the casino project.  UNGER also convinced E.C. to invest an additional approximately $79,985 into the casino project.

18.     In or around June 2014, E.C. told UNGER that she wanted to liquidate her investment in the casino project.  UNGER drafted wiring instructions for approximately

3

$1,900,000, which represented her total investment, including earnings, to be returned to E.C. E.C.'s entire investment was lost and the wiring request was not completed.

**B.    MONIES EMBEZZLED FROM E.C.'S ACCOUNTS**

19.    From on or about June 14, 2013, to on or about May 22, 2014, UNGER embezzled funds from E.C.'s accounts without her knowledge or consent, in addition to soliciting loans from E.C., which UNGER never intended to repay and did not repay, to enrich himself and pay for his own personal expenses.

20.    In or around June 2007, UNGER borrowed approximately $25,000 from E.C. Subsequently UNGER claimed to have repaid E.C. by depositing money directly into her account.  Periodically, UNGER would show E.C. uncashed checks as evidence of the repayment of the loan.

21.    From in and around May 2010, through in and around October 2013, E.C. loaned UNGER additional monies totaling approximately $64,200.  He falsely told her he was repaying the loans by depositing money into her accounts.  UNGER never made a repayment for any of the loans from E.C., which totaled approximately $89,200 in the fall of 2013.

22.    From in and around December 2013 through in and around May 2014, UNGER used his access to E.C.'s personal bank account (JP Morgan Chase Account No. ending in #8020) to make 20 withdrawals totaling approximately $43,400, without E.C.'s knowledge or consent to personally enrich himself and pay for personal expenses.

23.    On or about June 7, 2013, UNGER convinced E.C. to open two bank accounts (JP Morgan Chase Account Nos. ending in #1095 and #5272) in order to facilitate investment into a youth sports complex.  E.C. funded the accounts with over $100,000.  UNGER represented that the money would lie dormant in the accounts and that she could take her money back if she changed her mind.

4

24.     From on or about June 14, 2013, through on or about March 21, 2014, UNGER made 57 unauthorized cash withdrawals, totaling approximately $106,900, from the accounts ending in #1095 and #5272 to personally enrich himself and pay for personal expenses.

25.     In or around May 2014, E.C. learned of a $1,000 purchase on her credit card, which she did not authorize.  E.C. discovered that UNGER used her credit card for other purchases totaling approximately $18,164.31 for UNGER's daughter's college expenses.

26.     As a result of the foregoing conduct described in paragraphs 13 through 25, UNGER embezzled a total of approximately $267,664.31 from E.C.

**C.     UNGER USED E.C.'S MONEY TO COVER LOSSES FOR OTHER CLIENTS**

27.     UNGER used E.C.'s accounts to cover losses of his other clients to conceal his own mistakes and poor investment advice.

28.     In or around June 2003, J.V. and D.V. made an investment in an individual retirement annuity account on the advice of UNGER and others.

29.     In or around October 2012, UNGER notified J.V. and D.V. of penalties and additional tax owed for distributions from their annuity before they reached 59 1/2 years old. UNGER previously failed to disclose to either J.V. or D.V. that there were additional tax liabilities they would incur for early distributions from their annuity.

30.     UNGER told J.V. and D.V. that he would attempt to have an insurance company reimburse them for the penalties and additional tax incurred by the early distribution.  UNGER gave them assurances that he would personally compensate them if the insurance company did not provide coverage.

5

31.     From in and around October 2013, to in and around November 2013, without E.C.'s knowledge or consent, UNGER wired monies from E.C.'s accounts to J.V. and D.V. to reimburse them for penalties and additional tax owed from early distributions from their annuity.

32.     On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, UNGER, for the purpose of executing the scheme and artifice to defraud his clients to obtain money and property by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds for the purpose of executing such a scheme or artifice, each constituting a separate count:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | October 23, 2013 | Wire from E.C. account number ending in #5272 to J.V.'s Bank of Hawaii account number ending in #917 in the amount of $10,000. |
| 2 | November 29, 2013 | Wire from E.C. account number ending in #5272 to J.V.'s Bank of Hawaii account number ending in #917 in the amount of $9,800. |

In violation of Title 18, United States Code, Section 1343.

## COUNTS 3-7
### (False Returns, 26 U.S.C. § 7206(1))

The United States Attorney further charges:

33.     The general allegations in paragraphs 1 through 32 are incorporated herein and realleged by reference.

34.     On or about the dates listed below, in the Northern District of Ohio, UNGER, a resident of Shaker Heights, Ohio, did willfully make and subscribe U.S. Individual Income Tax Returns, Form 1040, for the calendar years 2010, 2011, 2012, 2013 and 2014, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the

6

Internal Revenue Service, and which UNGER did not believe to be true and correct as to every

material matter in that, as he then and there well knew and believed, said return understated total

income by failing to report income the defendant had that year in from monies, resulting in

additional tax due and owing to the United States of America, he illegally converted from client

funds for his personal use and to pay personal expenses, to wit:

| Count | Date Return Received by IRS | Tax Year | Taxable Income Per Return | Additional Unreported Income | Additional Tax Due & Owing |
|---|---|---|---|---|---|
| 3 | October 12, 2011 | 2010 | $76,334 | $18,000 | $4,500 |
| 4 | October 13, 2012 | 2011 | $45,462 | $13,500 | $2,025 |
| 5 | October 9, 2013 | 2012 | $99,763 | $25,700 | $7,372 |
| 6 | October 13, 2014 | 2013 | $11,866 | $108,000 | $22,836 |
| 7 | September 29, 2015 | 2014 | $0 | $85,958.31 | $12,760 |

In violation of Title 26, United States Code, Section 7206(1).

JUSTIN E. HERDMAN
United States Attorney

By: _____
Michael L. Collyer, Chief
White Collar Crime Unit

7